IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONNECT INSURED TELEPHONE, INC., | § | |
| | § | |
| | § | |
| Plaintiff-counterdefendant, | § | |
| | § | Civil Action No. 3:10-CV-1897-D |
| VS. | § | |
| | § | |
| QWEST LONG DISTANCE, INC., | § | |
| | § | |
| Defendant-counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant-counterplaintiff Qwest Communications Company, LLC d/b/a Century Link QCC ("Qwest") moves for leave to amend the scheduling order pursuant to Fed. R. Civ. P. 16(b)(4) so that it can file an otherwise untimely Rule 11 motion. For the reasons that follow, the court denies the motion.

I

To decide this motion, the court need only briefly summarize the background facts and procedural history of the case. Plaintiff-counterdefendant Connect Insured Telephone, Inc. ("Connect") sued Qwest on various theories, alleging that Qwest had failed to pay Connect for telecommunications services. Qwest asserted various counterclaims, alleging that it was not liable to Connect and that Connect owed Qwest for sums that Connect had improperly billed Qwest.[1] The court has modified the original scheduling order in this case

---

[1]The court disposed of several claims in *Connect Insured Telephone, Inc. v. Qwest Long Distance, Inc.*, 2012 WL 2995063 (N.D. Tex. July 23, 2012) (Fitzwater, C.J.).

three times.  The most recent scheduling order, filed on November 23, 2011, set February 28, 2012 as the deadline for filing motions not "otherwise covered" by the order.  Rule 11 motions were not "otherwise covered" by the scheduling order and are therefore regulated by this deadline.  In a letter sent on September 19, 2011, Qwest notified Connect of its intent to file a Rule 11 motion.  On February 28, 2012 Qwest filed the instant motion for leave to amend the scheduling order.  Qwest requests that the court extend the deadline to file Rule 11 motions for 21 days so that it can comply with Rule 11(c)(2)'s safe harbor provision, which provides for a default notice period of 21 days before such a motion can be filed with or presented to the court.  Rule 11(c)(2) effectively requires that a Rule 11 motion be served on the other party 21 days before the motion is filed with or presented to the court.  *See* Rule 11(c)(2); *Marlin v. Moody Nat'l Bank, N.A.*, 533 F.3d 374, 378 (5th Cir. 2008).

Qwest argues that good cause exists for the requested extension.  It contends that, although it notified Connect of its intent to file a Rule 11 motion in September 2011, it wanted to give Connect the benefit of full discovery so that Connect could uncover facts supporting its legal claims, and the discovery period did not end until February 27, 2012.

Connect responds that because the Fifth Circuit follows the "snapshot rule," and Qwest's Rule 11 motion is based on pleadings filed as early as September 2010, it is irrelevant to the merits of the Rule 11 motion whether Connect found additional facts in discovery.  In other words, Connect reasons that, regardless of what information it

---

Pertinent background facts and procedural history can be found in that memorandum opinion and order.

subsequently found in discovery that supported its filings, the court would conduct the same Rule 11 inquiry: whether, at the time Connect's counsel signed the filing, the arguments and evidentiary assertions in the filing were warranted.  Connect maintains that, if the court would conduct the same analysis of the Rule 11 motion, regardless of when the motion was filed, Qwest's argument that it wanted to give Connect the benefit of full discovery cannot establish good cause to amend the scheduling order.

Qwest replies by asserting several additional reasons why there is good cause to amend the scheduling order.  First, it posits that waiting until the end of discovery was necessary to negate Connect's anticipated argument that it needed to complete discovery to fully address the factual basis for its filing, because Connect had previously stated that it needed the full discovery period before answering certain interrogatories.  Second, Qwest argues that much of the evidence it needed to prove that Connect did not have a basis for filing the complaint was in the possession of third parties.  Third, Qwest maintains that two depositions occurred near the motion deadline that contained evidence pertinent to Qwest's Rule 11 motion, and the timing of these depositions prevented Qwest from timely filing the motion.  Fourth, Qwest argues that its September 2011 letter informing Connect of its intent to file a Rule 11 motion does not show a lack of diligence because the advisory committee notes to Rule 11 specifically state that counsel should give notice of a potential Rule 11 violation to the opposing party.  *See* Rule 11 advisory committee's note (1993 amendment, subdivisions (b), (c)).  Fifth, Qwest avers that the "motion[s] not otherwise covered" deadline in the scheduling order could not apply to Rule 11 motions because, if it did, Qwest would

be unable to ever file a Rule 11 motion regarding any unwarranted assertions of claims that are filed within 21 days of the deadline.

## II

Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." The "good cause" standard focuses on the diligence of the party seeking to modify the scheduling order. *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish "good cause." *Id.*; *Price v. United Guar. Residential Ins. Co.*, 2005 WL 265164, at *4 (N.D. Tex. Feb. 2, 2005) (Fish, C.J.) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)). Instead, the movant must show that, despite its diligence, it could not reasonably have met the scheduling deadline. *Am. Tourmaline Fields*, 1998 WL 874825, at *1 (citing 6A Wright, et al., *Federal Practice & Procedure*, § 1522.1 at 231 (2d ed. 1990)); *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S & W Enters., LLC v. Southtrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003)).

"In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's explanation, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice." *Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *3 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.) (citing *S & W Enters.*, 315 F.3d at 536).

- 4 -

III

The court first addresses whether the scheduling order's February 28, 2012 deadline for " a motion not otherwise covered by this order" applies to Rule 11 motions and therefore requires Qwest to demonstrate good cause under Rule 16(b)(4) to modify the scheduling order. The court holds that it does.

The scheduling order states that "[a] party must file a motion not otherwise covered by this order no later than February 28, 2012." It also provides that this "deadline does not apply to motions in limine or to objections filed pursuant to Rule 26(a)(3)." Order at 2. Because a Rule 11 motion is neither "otherwise covered by this order" nor within the exceptions to the deadline, the scheduling order requires a Rule 11 motion to be filed by February 28, 2012. The purpose of this catchall deadline is to regulate the filing of pretrial motions so that the court can engage in an orderly process of bringing a case to trial. *See, e.g., Wright v. Blythe-Nelson*, 2001 WL 804529, at *3 (N.D. Tex. July 10, 2001) (Fitzwater, J.) (stating that one purpose of such a deadline is "to avoid . . . the filing of a flurry of significant motions on the eve of trial, when the parties and the court should be engaged in an orderly process of trial preparation."). It is the court's intent to regulate the filing of all pretrial motions except those that reasonably should be allowed close to commencement of trial, such as motions in limine.

Qwest argues that, if the catchall deadline includes Rule 11 motions, a party could never file a Rule 11 motion based on a filing made within 21 days of the deadline because of the 21-day notice requirement of Rule 11(c)(2). The court disagrees. If this were to occur,

- 5 -

the party seeking to file a Rule 11 motion could point to the timing of the opposing party's filing, and the operation of Rule 11(c)(2), as good cause to enlarge the deadline as to the contemplated motion. The court is well aware of its intentions when entering scheduling orders. It fully intends that the catchall deadline applies to Rule 11 motions.

IV

The court now considers under the four-factor test whether Qwest has demonstrated good cause under Rule 16(b)(4) to modify the catchall deadline to enable it to file the Rule 11 motion.[2]

A

The first factor is Qwest's explanation. Qwest asserts several explanations for failing to timely file the Rule 11 motion.

First, Qwest argues that, to negate Connect's anticipated argument that it needed full discovery to adequately respond to the Rule 11 motion, it waited to file the motion until discovery was closed. But as Connect points out, Rule 11 motions are governed by the "'snapshot rule,' which 'ensures that Rule 11 liability is assessed only for a violation existing at the moment of filing." *Marlin*, 533 F.3d at 380 (quoting *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir. 2006)); *see also FDIC v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994) (Rule 11 "sanctions are to be applied only where, at the time of the filing, such arguments were unwarranted."); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th

---

[2]The court notes that neither party specifically tailors its arguments to these four factors. As framed, the arguments presented relate almost exclusively to the first factor.

Cir. 1988) (en banc) ("Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed on the document."). Therefore, any facts that Connect learned after it made the filings that triggered Qwest's Rule 11 motion could not affect the merits of the motion. The court therefore finds this explanation to be inadequate.

Qwest contends that much of the evidence it needed to prove the Rule 11 motion was in the possession of third parties. Qwest specifically relies on two depositions taken late in the discovery period to explain why the Rule 11 motion was untimely.[3] First, on February 1, 2012 Qwest redeposed Connect's officer who had modified his earlier deposition by way of an errata sheet. According to Qwest, this deposition merely confirmed the position Qwest already intended to take in its Rule 11 motion. Following this deposition, Qwest could have complied with Rule 11's safe harbor by serving Connect on February 7, 2012 and timely filing its Rule 11 motion by the February 28 deadline. The first deposition therefore does not provide a sufficient explanation for the untimeliness of Qwest's Rule 11 motion. The second deposition was of Leo Wrobel ("Wrobel"), taken on February 3, but Qwest did not receive the deposition transcripts until February 21. Qwest has not specified, however, what evidence from Wrobel's deposition was pertinent to, or necessary for, its Rule 11 motion. Moreover, even had the Wrobel deposition provided Qwest with evidence critical to its Rule

---

[3]To the extent Qwest argues that evidence related to the Rule 11 motion was in the possession of third parties, other than concerning arguments related to the two specific depositions that the court discusses in detail, Qwest has not specified the evidence that the parties possessed, whether Qwest eventually obtained the evidence, or, most important, why this shows that Qwest could not have filed the Rule 11 motion by the deadline in the scheduling order.

11 motion, diligence would have required Qwest to file a motion for leave as soon as reasonably possible after it determined that it would not be able to comply with the deadline set forth in the scheduling order. At the very latest, Qwest should have known this 21 days before the deadline. This is especially the case where, as here, Qwest already had much of the evidence needed to file the Rule 11 motion. Instead, Qwest filed the instant motion for leave on the date of the deadline set by the scheduling order, i.e., 21 days later than the day it should have known that it could not comply with both the scheduling order and the Rule 11(c)(2) safe harbor provision.

The court holds that Qwest has not demonstrated that, "despite [its] diligence, [it] could not have reasonably met the scheduling deadline." *Am. Tourmaline Fields*, 1998 WL 874825, at \*1. Therefore, the first factor of the court's Rule 16(b)(4) analysis weighs strongly against granting Qwest leave to modify the scheduling order.

## B

The second factor addresses the importance of the motion to the case. The court finds this factor to be neutral. A Rule 11 motion can serve as a deterrent to wasteful litigation, but it can also be filed after the case has been adjudicated. Because a Rule 11 motion can be filed later, this is not a case where denying Qwest's motion for leave effectively bars the motion altogether.

## C

The court addresses together the third and fourth factors: the potential for prejudice in granting Qwest's requested relief, and the availability of a continuance to cure such

prejudice.  Connect will not be prejudiced if the scheduling order is amended to allow Qwest to file a Rule 11 motion.  As discussed above, the Rule 11 motion would be decided according to the "snapshot rule;" therefore, the determination whether Rule 11 sanctions are warranted will be based on Connect's filings at the time they were filed.  Moreover, the trial in this case is several months off, and requiring Connect to respond to a Rule 11 motion would not unduly interfere with its trial preparations.  The court concludes that the third factor supports granting Qwest's motion to amend the scheduling order.  Because there is no prejudice to cure, the fourth factor is neutral.

D

Assessing the four factors holistically, the court concludes that Qwest has not established good cause to modify the scheduling order.  The court "does not mechanically count the number of factors that favor each side[,] [a]nd it remembers at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order."  *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).  Although the third factor weighs in Qwest's favor, this factor is alone insufficient for Qwest to establish good cause.  *See Am. Tourmaline Fields*, 1998 WL 874825, at *1 ("The absence of prejudice to the nonmovant is relevant to Rule 15(a), but it does not fulfill the 'good cause' requirement of Rule 16(b).").  Because Qwest has failed to provide a sufficient explanation for the untimely filing of its

Rule 11 motion and showed a lack of diligence[4] by not filing its motion to amend the scheduling order until at least 21 days after it should have known that it could not comply with Rule 11's safe harbor and timely file the motion, Qwest has not established good cause to amend the scheduling order.

E

In denying Qwest's motion, the court notes that a Rule 11 motion can be filed later in the litigation, including after trial. Although there is no *per se* rule or practice that warrants deferring such motions—and the salutary role of Rule 11 as a deterrent to wasteful litigation would be compromised were there such a rule or practice—the court routinely defers ruling on such motions when they essentially require the court to fully adjudicate the merits of the case before trial. Because Qwest's motion would appear to impose this obligation on the court, it likely would have deferred a ruling even had the motion been filed. The court can consider this circumstance if Qwest later seeks leave to file a Rule 11 motion, e.g., after the trial is concluded.

---

[4]Qwest argues that the letter it sent to Connect in September 2011 stating its intent to file a Rule 11 motion cannot be used to show a lack of diligence because the advisory committee notes to Rule 11 encourages parties to give such notice to the opposing party. *See* Rule 11 advisory committee's note (1993 amendment, subdivisions (b), (c)). Because the court does not rely on the September 2011 letter in holding that Qwest did not demonstrate that it acted with diligence, it need not reach this argument.

*    *    *

For the reasons explained, the court denies Qwest's February 28, 2012 motion to amend the scheduling order.

**SO ORDERED.**

August 3, 2012.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE